J-A22035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| JACQUELYN RUDZINSKI | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER W. SALMON | : | No. 945 EDA 2025 |

Appeal from the Order Entered April 4, 2025
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): 0C2000950

BEFORE: LAZARUS, P.J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED NOVEMBER 24, 2025**

Jacquelyn Rudzinski ("Mother") appeals the April 4, 2025, order that granted a petition to modify the existing custody order filed by Christopher W. Salmon ("Father") (collectively, "Parents") and permitted him to relocate with Parents' biological son, A.R., born in August 2020, to Charleston, South Carolina. After careful consideration, we affirm.

We gather the relevant factual and procedural history of this matter from the certified record. Parents were in a romantic relationship between 2014 and 2019 but never married. **See Rudzinski v. Salmon**, 301 A.3d 913, at *4 (Pa.Super. 2023) (Table) ("**Rudzinski**"). Prior to A.R.'s birth in August 2020, the relationship between the parties broke down completely. Mother initiated litigation in September 2020 by filing a custody complaint seeking

_____

[*] Former Justice specially assigned to the Superior Court.

"sole physical and legal custody" of A.R. *Id.* Mother also "blocked" Father from interacting with A.R. for the first seven months of the child's life, until forced to do so by the entry of an interim custody order in May 2021. *Id.* at *4.

On November 2, 2022, the trial court entered an order ("existing custody order") that awarded Father sole legal custody of A.R. and established equally shared physical custody on a 2-2-5-5 basis. *See id.* at *1. The trial court predicated its legal custody award upon its conclusion that Father was more likely to encourage contact between A.R. and Mother, as well as was more willing to cooperate. *See id.* at *5; *see also* 23 Pa.C.S.A. § 5328(a)(1), (13), (16). Mother appealed, and this Court affirmed in June 2023. *See id.*

Contemporaneously, Father married Carly Salmon ("Wife"), with whom he had a daughter in May 2022. Wife has an older child from a previous relationship, and this older child also resides with them. Separately, Mother married B.C. ("Husband"). Mother and Husband have a son, who was born in April 2022. Husband's older daughter from a prior relationship also resides with them.

On March 22, 2024, Mother filed a petition to modify the existing custody order seeking primary physical custody and shared legal custody. The same day, Mother also filed a petition for contempt claiming that Father had violated the terms of the existing custody order by allegedly withholding information regarding A.R.'s pediatric care. Specifically, Mother's contempt

claims related to her being denied access to certain records concerning A.R.'s pediatric care on the patient portal maintained by the child's primary pediatric provider, Children's Hospital of Philadelphia ("CHOP"). On June 21, 2024, Father filed a modification petition requesting primary physical custody.

In November 2024, Father submitted notice of his intent to relocate with A.R. to Charleston, South Carolina, in order to pursue a new job opportunity that was slated to begin in June 2025. *See* N.T., 3/12/25, at 274-75. Specifically, Father worked for a Porsche dealership in the Philadelphia area and had an opportunity to begin working for a more prestigious Porsche dealership in South Carolina. *See id.* at 224, 243. Mother filed a counter-affidavit in the trial court objecting to Father's proposed relocation.

Prior to the resolution of these issues, Father's employer informed him that he would have to begin work in South Carolina no later than February 1, 2025. *See id.* at 274-75. Ultimately, Father relocated to South Carolina on or about January 28, 2025. *See id.* at 276. In response to Father's departure from Pennsylvania, Mother refused to relinquish physical custody pending the outcome of these proceedings despite the physical custody parameters established by the existing custody order. *See id.* at 55. Apart from short periods on certain weekdays when Wife or other members of Father's extended family picked A.R. up from school, Mother would not permit A.R. to visit Father or interact with his family or other children. *See id.* at 55-71.

On March 12, 2025, the trial court held a consolidated hearing on these matters, wherein Parents testified. Mother also adduced testimony from Erica Williams, Ph.D., a licensed psychologist who testified as an expert in bonding evaluations. Father presented testimony from Melanie Marchant, who is a practice manager at CHOP. *See id.* at 197-98.

At the conclusion of the hearing, the trial court orally set forth its assessment of the relocation factors at 23 Pa.C.S.A. § 5337(h) and the custody factors at 23 Pa.C.S.A. § 5328(a). *See* N.T., 3/12/25, at 323-39. The same day, the court filed an order denying Mother's petitions and granting Father's modification petition and proposed relocation with A.R. *See* Order, 3/12/25, at 1-2. The court also temporarily maintained the existing custody order. *See id.* at 1 ("The order dated November 2, 2022[,] shall remain in effect until the submission of a proposed order.").

On April 4, 2025, the trial court filed a final custody order that, *inter alia*: (1) maintained Father's sole legal custody of A.R.; (2) granted Father primary physical custody in South Carolina; and (3) awarded Mother partial physical custody in Pennsylvania during summer vacation and on various holidays on a rotating basis with Father. *See* Order, 4/4/25, at 1-4.

On April 10, 2025, Mother timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On May 16, 2025, the trial court filed a responsive

Rule 1925(a)(2)(ii) opinion detailing its rationale, which continued to rely upon its discussion at the conclusion of the hearing.

Mother has raised the following issues for our consideration:

1. Whether the trial court properly weighed the applicable custody factors in issuing its orders dated March 12, 2025, and April 4, 2025, including, but not limited to, the factors pursuant to 23 Pa.C.S.A. § 5328(a)?

2. Whether the trial court erred or committed [an] abuse of discretion by dismissing Mother's petition to modify to reinstate Mother's legal custody?

3. Whether the trial court erred or committed [an] abuse of discretion by dismissing Mother's petition to modify for primary physical custody?

4. Whether the trial court erred or committed [an] abuse of discretion by granting Father's petition to modify custody?

5. Whether the trial court erred or committed [an] abuse of discretion by granting Father's relocation to Charleston, South Carolina?

6. Whether the trial court erred or committed [an] abuse of discretion in its application of the relocation factors pursuant to 23 Pa.C.S.A. § 5337(h)?

7. Whether the trial court erred or committed [an] abuse of discretion in failing to require Father to fully meet his burden in determining that the relocation is in the child's best interest?

8. Whether the trial court erred or committed [an] abuse of discretion by denying Mother's petition for contempt against Father?

Mother's Brief at 4-5 (cleaned up; issues reordered for ease of disposition).

Our standard and scope of review in this context is well-established:

"In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court."

*White v. Malecki*, 296 A.3d 1210, 1213 (Pa.Super. 2023) (quoting *D.K. v. S.P.K.*, 102 A.3d 467, 478 (Pa.Super. 2014)).

We emphasize that an abuse of discretion does not exist merely because this Court would have reached a different conclusion than the trial court. *See Taylor v. Smith*, 302 A.3d 203, 206-07 (Pa.Super. 2023). This Court is not empowered to render "independent factual determinations" that differ from those of the trial court. *Id.* at 207. "[I]t is not this Court's function to determine whether the trial court reached the 'right' decision," but, rather, to assess whether the findings below are supported by competent evidence. *Id.*

Furthermore, "[i]n cases like the instant matter, where one party proposed relocation while the other sought custody modification, we have held courts must consider **both** sets of custody factors." *E.C.S. v. M.C.S.*, 256 A.3d 449, 453 (Pa.Super. 2021) (cleaned up; emphasis in original). *See* 23 Pa.C.S.A. §§ 5328(a), 5337(h). "Similarly, when a proposed relocation necessarily involves the modification of the parties' custody, courts must

consider both sets of factors." *Id.* "A court should avoid dissociating the issue of primary custody from the issue of relocation, and should instead decide the two issues together under a single umbrella of best interests of the children." *S.S. v. K.F.*, 189 A.3d 1093, 1098 (Pa.Super. 2018) (cleaned up).

We begin by addressing Mother's first four claims for relief, which collectively challenge various aspects of the trial court's findings with respect to the custody factors at Section 5328(a). *See* Mother's Brief at 40-63. Specifically, Mother argues that the trial court's conclusions pursuant to Section 5328(a)(2.3), (4), (5), (10), and (13) were erroneous. With the exception of Section 5328(a)(5), these are the custody factors identified by the trial court as having significant weight in its determinations and which it concluded favored granting Father's requests. *See* N.T., 3/12/25, at 323-31. Overall, Mother maintains that "[t]he evidence overwhelmingly support[ed] a finding that [A.R.'s] best interests would be served by granting Mother primary physical custody in Pennsylvania." *Id.* at 63. We disagree.

As with all custody-related matters, the Pennsylvania courts' "paramount concern is the best interest of the child involved." *Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa.Super. 2023) (cleaned up). To that end, our law provides that a court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S.A. § 5338(a). Specifically, Section 5328(a) sets forth a number of factors that a court must consider prior to modifying an existing custody order. *See E.B. v.*

*D.B.*, 209 A.3d 451, 460 (Pa.Super. 2019). While a court's general consideration of these factors is mandatory, "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Id.* (cleaned up).

Mother's first four arguments implicate Section 5328(a), which provided, at the time of these proceedings, as follows:[1]

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1) and (2.2) which affect the safety of the child, including the following:

(1) Which party is more likely to ensure the safety of the child.

(2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

_____

[1] We note that our General Assembly amended Section 5328(a) on June 30, 2025, with an effective date of August 29, 2025. *See* 2025 Pa. Legis. Serv. Act 2025-11 (H.B. 378). Since the proceedings in the case *sub judice* concluded before the effective date, the amendments are not applicable. *See R.M. v. J.S.*, 20 A.3d 496, 513 n.15 (Pa.Super. 2011) (declining to apply revised version of statute in proceedings that concluded in the trial court several months prior to the effective date of the at-issue legislation).

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one

another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In order to evince proper consideration of these required elements, custody courts must set forth a discussion of these best-interest factors "prior to the deadline by which a litigant must file a notice of appeal." *A.V. v. S.T.*, 87 A.3d 818, 820 (Pa.Super. 2014). As noted above, the trial court provided a timely assessment of these custody factors on the record at the conclusion of the March 12, 2025, custody hearing. *See* N.T., 3/12/25, at 323-31; 23 Pa.C.S.A. § 5323(d). We will address each of Mother's challenges *seriatim*.

With respect to Section 5328(a)(2.3), the trial court concluded that Father was the party who was "more likely to encourage and permit frequent and continuing contact" with respect to Mother. *See* N.T., 3/12/25, at 324. Specifically, the court found that "[t]he record is devoid of any substantial credible evidence that [M]other will encourage any relationship or contact at all between [F]ather and [A.R.]" *Id.* As noted above, the court found this factor to be of substantial consequence and weighed it "very heavily" in Father's favor in rendering its holding in this case. *Id.*

- 10 -

Tellingly, Mother's challenge to the trial court's finding under Section 5328(a)(2.3) does not refer to any alleged evidence concerning Mother's encouragement of the relationship between Father and A.R. that was overlooked by the trial court. *See* Mother's Brief at 45-47. Instead, she claims that the trial court should have weighed this factor in her favor due to the short period of notice Father gave with respect to his relocation to South Carolina prior to the conclusion of these proceedings. *See id.* We disagree. While Mother characterizes Father's short-notice move in January 2025 as being indicative of his alleged disregard for co-parenting responsibilities, our review has uncovered no evidence that Father's actions negatively impacted Mother's relationship with A.R. *Cf.* 23 Pa.C.S.A. § 5328(a)(2.3).

Instead, the trial court's conclusion on this point was primarily motivated by Mother's unilateral decision to withhold custody of A.R. from Father's family after he moved to South Carolina in January 2025 until the conclusion of the custody hearing on March 12, 2025. *See* N.T., 3/12/25, at 329 ("After [F]ather left for South Carolina, [M]other withheld the child from [F]ather and [F]ather's family . . . ."); *see also* Trial Court Opinion ("T.C.O."), 5/16/25, at 15 (noting that "Mother's behavior following Father's relocation to South Carolina" was of "significant concern"). Our review of the certified record indicates that these findings are supported by the evidence.

Mother's own testimony confirms that she *sua sponte* assumed primary physical custody of A.R. once Father left the Philadelphia area. *See* N.T.,

3/12/25, at 55-71 (Mother confirming she refused to share physical custody of A.R. following Father's departure from the Philadelphia area). Mother also confirmed that she refused to permit A.R. to visit Father in South Carolina. *See id.* at 84-85. Finally, Mother's own averments confirmed that, even after Father returned to the Philadelphia area several days before the March 12, 2025, hearing, Mother refused to permit A.R. to see him. *See id.* at 86-89.

The record fully confirms the existence of the concerns identified by the trial court as determinative pursuant to Section 5328(a)(2.3). Since the trial court's findings are supported by the certified record, we are bound by them. *See White*, 296 A.3d at 1213. Thus, Mother's claim lacks merit.

With respect to Section 5328(a)(4), the trial court concluded that A.R.'s "need for stability and continuity in education, family life and community life" would be best be served by approving relocation to South Carolina. *See* N.T., 3/12/25, at 324-25. Although the court noted its belief that any change in custody would inevitably "interrupt" the stability of A.R.'s life to some extent, it clearly indicated that it believed that relocation would offer a better quality of life and community for A.R. *Id.* at 325. Overall, the trial court found relocation would "enhance the quality of life of the child[.]" *Id.* at 335.

Mother claims that the trial court "erroneously minimized" the importance of this finding by noting that any change in custody would inevitably interrupt the stability of A.R.'s life. *See* Mother's Brief at 61-62. Her objection arises under *D.K.D. v. A.L.C.*, 141 A.3d 566, 569-79 (Pa.Super.

2016), which pertained to a proposed relocation that was approved by a trial court despite concerns regarding the child's "stability and routine." **D.K.D.**, 141 A.3d at 574. Specifically, the trial court in **D.K.D.** reasoned that some level of disruption was inevitable since its decision would force the child to attend a new school district, regardless of how it favored. **See id.** This Court reversed pursuant to the relocation factors at Section 5337(h)(5)-(7), concluding that the trial court had failed to acknowledge: (1) that one of the parents had offered to relocate to prevent the child from having to change schools; and (2) the additional disruptions to the child's "routines and friendships" that relocation would precipitate. **Id.**

Preliminarily, we emphasize that the analysis in **D.K.D.** did not arise under Section 5328(a) and, thus, its precedential value in this case is questionable. Assuming, *arguendo*, that the basic principles expressed in **D.K.D.** are also applicable to our analysis under Section 5328(a), we observe no arguable basis upon which to disturb the trial court's finding.

Furthermore, **D.K.D.** is readily distinguishable. In **D.K.D.**, this Court reversed a trial court's approval of a relocation from Pittsburgh, Pennsylvania, to Treasure Island, Florida, based upon our conclusion that remaining in the Commonwealth would limit "disruptions to [the child's] routines, friendships, and existing athletic and cultural activities." **D.K.D.**, 141 A.3d at 579. In that case, however, the child in question was being treated by regional specialists for an autism spectrum disorder, which made it difficult for him to adjust to

"foreign environments." *Id.* at 574. Furthermore, there were specific concerns in *D.K.D.* related to the various aspects of that child's specific routine, which would be disrupted by a relocation to Florida, including "private karate instruction, visiting friend's homes, and enjoying programs at the Carnegie Museum and Carnegie Science Center in Pittsburgh." *Id.*

Instantly, there are no indications that A.R. is developmentally unable to adapt to new environments. Additionally, Mother's arguments fail to specifically identify the aspects of Child's life that would be negatively impacted by relocation to South Carolina. Furthermore, our review of the transcripts and evidence of record have similarly revealed no concerns analogous to those raised in *D.K.D.* The specific factual concerns that animated this Court's decision in *D.K.D.* are not present in this case.

In *D.K.D.*, the trial court's inappropriate reliance upon its belief that disruption of the child's life was inevitable led it to disregard the importance of several disruptions that would be caused by relocation, which pertained to the child's school choice and participation in "cultural, educational, and athletic" activities in Pennsylvania. *D.K.D.*, 141 A.3d at 579. While the court in this case made similar comments, there is no indication that it also ignored the potential for specific disruptions. To the contrary, the court indicated that it considered the potential for disruption to A.R.'s life with great seriousness: "Under the circumstances, this [c]ourt is thereby charged with making a

decision which is going to change a child's life for the better, and this [c]ourt puts heavy weight on this factor." N.T., 3/12/25, at 325.

While Mother baldly avers that granting her primary physical custody would "minimize disruption to the child's daily routine, school, religious upbringing, and community relationships," her arguments fail to identify these concerns with specificity. Mother's Brief at 62. Aside from Mother's general averments of error, there is no testimony or argument regarding the importance of A.R.'s existing routines in the Philadelphia area. Thus, unlike **D.K.D.**, the record does not reflect that the trial court disregarded the importance of potential disruptions to the child's life. Accordingly, we observe no legal error or abuse of discretion in its reasoning.

Mother's next argument pertains to Section 5328(a)(5), which considers the "availability of extended family." 23 Pa.C.S.A. § 5328(a)(5). Specifically, Mother argues that the trial court's findings disregarded that relocation to South Carolina would "significantly" reduce A.R.'s access to Parents' respective extended families. Mother's Brief at 62. We disagree.

Contrary to Mother's arguments, the trial court acknowledged that the Parents' extended families all reside in the Philadelphia area. **See** N.T., 3/12/25, at 325 ("Both parties have extended family in this area."). It is clear, however, that the trial court did not afford this factor significant weight in rendering its decision. **See id.** To the extent that Mother requests that we re-weigh the trial court's assessment of this custody factor, our standard of

- 15 -

review precludes us from doing so. *See White*, 296 A.3d at 1213. Since the record supports the trial court's findings, we may not disturb it.

Turning to Mother's arguments pursuant to Section 5328(a)(10), the trial court concluded that Father was more likely to attend to A.R.'s daily physical, emotional, developmental, educational, and special needs. *See* N.T., 3/12/25, at 326-27; 23 Pa.C.S.A. § 5328(a)(10). Specifically, the trial court based this decision upon findings that: (1) Mother failed to follow-through on A.R.'s medical needs while he was in her care; (2) Mother declined to make sufficient inquiries regarding A.R.'s school choice; (3) Mother did not involve herself regarding A.R.'s need for "occupational therapy" at school; and (4) Mother attempted to interfere with Father's prerogative to make medical decisions regarding A.R. as his sole legal custodian, specifically regarding vaccinations. *See* N.T., 3/12/25, at 326-27. The court also afforded this factor heavy weight in crafting its overall custody decision. *See id.*

Mother argues these findings are not supported by the certified record. *See* Mother's Brief at 50. Upon review, we must disagree.

As to Mother's lack of medical follow-through, her own testimony indicated that she failed to give doses of prescribed antibiotics to A.R. on at least one occasion. *See* N.T., 3/12/25, at 44 ("I think he had one more dose that I just miscalculated or I just misunderstood."). With respect to Mother's lack of input on school choice, Father testified that during the selection of A.R.'s pre-K program Mother did not tour any of the three schools he

- 16 -

proposed, despite Father touring the single institution proposed by Mother. *See id.* at 236-39. Along similar lines, Mother was also unable to recall a letter she received from Father in January 2025 indicating that A.R. would need occupational therapy. *See id.* at 149-51. Finally, Mother testified she refused to allow her insurance to pay for A.R.'s vaccinations. *See id.* at 111-12. When Father indicated A.R. would be vaccinated, regardless, the certified record reflects Mother called A.R.'s pediatrician on multiple occasions attempting to prevent the vaccinations from occurring, despite Father's legal custody award. *See id.* at 115-20; *see also* Father's Exhibits 1-4.

Thus, the trial court's findings with respect to Section 5328(a)(10) are well-supported by the record. Accordingly, no relief is due.

Mother's next claim pertains to Section 5328(a)(13), which assesses "[t]he level of conflict between the parties and the willingness and ability of the parties to cooperate with one another." 23 Pa.C.S.A. § 5328(a)(13). Specifically, Mother claims that the trial court failed to consider Father's early relocation to South Carolina in January 2025, which she claims should have weighed against him. *See* Mother's Brief at 62.

Mother's claim finds no support in the certified record. With respect to Section 5328(a)(13), the trial court found that "[t]he communication between [Parents] is extremely strained" and, essentially, noted that both parties were responsible for the timbre of their relationship. N.T., 3/12/25, at 328-29 ("The communication has not improved between the parties, and the flexibility has

- 17 -

not improved."). Contrary to Mother's claim, the trial court fully considered Father's relocation to South Carolina in January 2025 on short notice in rendering this determination. **See id.** The court, however, also concomitantly considered Mother's unilateral exercise of physical custody during this same time period. **See id.** Thus, we observe no basis upon which to conclude that the trial court disregarded Father's early departure to South Carolina.

In addition to her individualized claims of error, Mother also generally maintains that the court failed to afford the proper weight to the Section 5328(a) factors. **See** Mother's Brief at 63 ("The trial court abused its discretion by failing to give proper weight to the statutory best interest factors[.]"). She generally alleges that the evidence "overwhelmingly supports a finding that [A.R.'s] best interests would be served by granting Mother primary physical custody in Pennsylvania." **Id.** We disagree.

It is the trial court's bailiwick to determine which custody factors are "most salient and critical in each particular case." **See E.B.**, 209 A.3d at 460. As detailed above, the specific findings pursuant to Section 5328(a) challenged by Mother lack substantive merit. Since the trial court's findings are supported by the certified record, we must decline Mother's invitation to engage in a wholesale re-weighing of the evidence. **See id.**; **White**, 296 A.3d at 1213. No relief is due on Mother's arguments concerning the trial court's assessment of the custody factors at Section 5328(a).

Mother's next three claims for relief collectively challenge the trial court's findings with respect to the relocation factors at Section 5337(h). *See* Mother's Brief at 13-40. To better contextualize Mother's specific claims, we begin by reviewing this statute, which provides, in pertinent part, as follows:

**§ 5337. Relocation**

\* \* \* \* \*

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

**(i) Burden of proof.--**

(1) The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h).

(2) Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation.

23 Pa.C.S.A. § 5337(h)-(i).

As this language reveals, "Section 5337(h) enumerates ten factors a court must consider in determining whether to grant a proposed relocation[.]" *E.C.S.*, 256 A.3d at 453. The party seeking relocation bears the burden of establishing that relocation will "serve the best interest of the child" as demonstrated by these factors. 23 Pa.C.S.A. § 5337(i)(1). Both parties, however, have a concomitant burden to demonstrate that their "motives in either seeking the relocation or seeking to prevent the relocation" have been undertaken in good faith. 23 Pa.C.S.A. § 5337(i)(2).

Turning to Mother's claims for relief, she asserts that the trial court's consideration of the Section 5337(h) factors was in appropriately "cursory," such that it "cannot be ascertained from the record on appeal whether the trial court considered all of the factors[.]" Mother's Brief at 9. Alternatively, Mother challenges the trial court's findings at Section 5337(h)(1)-(3) and (5).[2] **See id.** at 9, 22, 24. Finally, Mother generally contends Father failed to meet his burden of proof pursuant to Section 5337(i)(1). **See id.** at 9-10. We will address each of Mother's claims, in turn.

Preliminarily, we find no merit in Mother's bald contention that the certified record fails to reflect the court's due consideration of the Section 5337(h) factors. At the conclusion of the March 12, 2025, hearing, the trial court set forth, on the record, detailed findings with respect to each of the relocation factors. **See** N.T., 3/12/25, at 331-39. Thereafter, the trial court reiterated and referred to these findings in its Rule 1925(a)(2)(ii) opinion. **See** T.C.O. at 12-16. Although Mother has declined to cite law in support of this aspect of her argument, we note for her benefit that the trial court was permitted to "delineate the reasons for its decision **on the record in open**

---

[2] Mother has also referred in passing to the trial court's findings with respect to Section 5337(h)(7)-(8) and (10). **See** Mother's Brief at 9, 24. To the extent Mother relies upon these references for relief, we conclude that she has waived this aspect of her claims for relief due to lack of development. **See Umbelina v. Adams**, 34 A.3d 151, 161 (Pa.Super. 2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citing Pa.R.A.P. 2119)).

**court**[.]" 23 Pa.C.S.A. § 5323(d) (emphasis added). Moreover, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa.Super. 2013). Based upon the foregoing, we readily conclude the trial court properly considered the statutory factors. *See*, *e.g.*, *id.* at 336 (holding that a court properly evinced its consideration of custody factors by explaining its rationale with reference to those factors).

Tellingly, in her next set of claims, Mother seemed capable of identifying the trial court's conclusions with sufficient specificity to challenge its findings with respect to the factors at Section 5337(h)(1)-(3) and (5).

Mother's first argument collectively challenges the trial court's findings pursuant to Section 5337(h)(1)-(3), which concerns A.R.'s relationship with both his Parents and their respective families, as well as "the feasibility of preserving the non-relocating parent's relationship." *See* Mother's Brief at 22; *see also* 23 Pa.C.S.A. § 5337(h)(1)-(3). Mother alleges that the trial court failed to consider that "the relocation severely impairs [A.R.'s] ability to maintain a meaningful relationship with [her]." *Id.* We disagree.

As a threshold matter, the trial court's findings belie the basic premise of Mother's claim, *i.e.*, that the trial court failed to consider the potential impact of relocation upon her relationship with A.R. To the contrary, the trial specifically noted: "**It is imperative that the relationship between**

- 22 -

**Mother and [A.R.] be preserved.**" N.T., 3/12/25, at 333 (emphasis added). In its findings pursuant to Section 5337(h)(1)-(3), the trial court fully credited the extent of Mother's relationship with A.R., acknowledging that she has had some manner of custody of, and "responsibility" for, A.R. since his birth. *Id.* at 331-32. While acknowledging that relocating to South Carolina would have a significant impact upon A.R.'s day-to-day life, the court concluded that it was "feasible" for Mother to maintain a relationship with A.R. through her regular periods of partial physical custody. *Id.* at 333. Furthermore, the trial court also noted that A.R. retained significant familial ties to Mother's home since Parents' respective extended families both continue to live in the Philadelphia area. *See id.* The court also relied upon Father's assurances that Mother would be welcome to visit A.R. in South Carolina. *See id.*

Although not explicitly referenced in Mother's brief, we discern that her arguments on this particular point primarily relate to the testimony of Dr. Williams, who testified that A.R. would suffer "irreparable harm" if Father's proposed relocation was permitted. *Id.* at 179. Dr. Williams based her conclusion upon one hour of observing A.R. interacting with Mother. *See id.* at 185. Dr. Williams also did not conduct any parallel assessments or observations regarding Father's relationship with A.R. *See id.* at 183.

Based upon the brevity of Dr. Williams' observations of A.R. and the one-sided nature of her assessments, the trial court chose not to credit her testimony concerning relocation. *See id.* at 333 ("The expert observed

[Mother and A.R.] for an hour in a controlled setting. . . .The court puts very little weight on the expert testimony and report[.]"). Since Dr. Williams's own averments at the custody hearing corroborate the trial court's concerns regarding the reliability of her testimony, we are bound by the court's credibility determination. **See White**, 296 A.3d at 1213.

Based upon the foregoing, we observe no error of law or abuse of discretion in the trial court's findings pursuant to Section 5337(h)(1)-(3).

Next, we will address Mother's arguments concerning the trial court's findings pursuant to the factors at Section 5337(h)(5), which assesses any "established pattern of conduct" by either parent to "promote or thwart the relationship of the child and the other party." Mother's Brief at 22-24; **see also** 23 Pa.C.S.A. § 5337(h)(5). Specifically, Mother maintains that Father allegedly demonstrated "disregard" for A.R.'s best interests by leaving for South Carolina prior to the issuance of the trial court's holding in these proceedings. **See** Mother's Brief at 23. She maintains that the trial court's findings did not appropriately consider these events. **Id.** at 23-24.

Preliminarily, it is not clear that Mother is correct in addressing this portion of her argument to Section 5337(h)(5). Contrary to her arguments, the trial court's findings pursuant to Section 5337(h)(1) clearly recognized that Father had been forced to relocate to South Carolina in January 2025 to begin his new job there. **See** N.T., 3/12/25, at 331 ("The relocating party had to start his job early and had to leave the child in Philadelphia, pending

- 24 -

relocation hearing. During that time, [F]ather left the child in the temporary full-time care of [M]other."). To the extent Mother maintains the court merely failed to consider this evidence, she is mistaken.

Assuming, *arguendo*, that Mother's arguments are not made in error, we acknowledge that the trial court deemed the factor at Section 5337(h)(5) to be irrelevant in this case. ***See id.*** at 334. We discern that Mother's true complaint on this point is that Father only provided her with two weeks of notice regarding his move to South Carolina at the end of January 2025. ***See*** Mother's Brief at 22-24; N.T., 3/12/25, at 274-76. Critically, however, Mother's arguments have failed to connect this short period of notice with a pattern of conduct by either party that promoted or thwarted the other party's relationship with A.R. ***Compare*** 23 Pa.C.S.A. § 5337(h)(5) ***with*** Mother's Brief at 22-24. Mother does not refer to any evidence in the certified record suggesting that Father's early departure to South Carolina had any salient impact upon the parties' respective relationships with A.R., and our review has uncovered none. It is clear that Father's early move did not thwart Mother's relationship with A.R. Thus, the court's determination that Section 5337(h)(5) was not relevant in these proceedings is supported by the record.

Based upon the foregoing, we find no abuse of discretion or error of law in the trial court's conclusions with respect to Section 5337(h)(5), which are fully supported by the certified record. No relief is due.

Mother also generally asserts that Father failed to meet his overall burden of proof, namely, that relocation would serve A.R.'s best interest. **See** 23 Pa.C.S.A. § 5337(i)(1). Specifically, Mother maintains that Father's claims that A.R.'s life would be better after relocating to South Carolina were inappropriately speculative. **See** Mother's Brief at 14-18 (citing **D.K.D. v. A.L.C.**, 141 A.3d 566, 569-79 (Pa.Super. 2016); **C.M.K. v. K.E.M.**, 45 A.3d 417, 426-29 (Pa.Super. 2012)). We disagree.

The trial court concluded that relocation would "significantly increase [F]ather's earning potential and station in life." N.T., 3/12/25, at 334. In addition to increasing Father's annual income by "approximately $100,000," the trial court concluded that relocation to South Carolina would also permit Wife to "become a stay-at-home parent," which would benefit A.R. in a variety of ways. **Id.** at 334-36. Additionally, the trial court noted that the home Father was in the process of purchasing was in the best school district in Charleston, which afforded A.R. increased educational opportunities. **See id.** at 335. Finally, the court concluded that the community in which A.R. would reside in South Carolina offered "a better climate, better neighborhood, better housing, many children for [A.R.] to bond with," and "activities in the community and local schools[.]" **Id.** at 337.

The court's findings are sufficiently supported by the certified record. Specifically, the court largely credited the testimony of Father for its conclusions, which it deemed to be both "substantial" and "credible." **Id.** In

his testimony, Father explained that he would also earn a significantly higher salary in South Carolina. *See id.* at 224, 244; *see also* Father's Exhibit 22 (Father's pay plan). Father also testified that this increase in income would allow Wife to retire and provide full-time childcare. *See* N.T., 3/12/25, at 243-44. Additionally, Father averred and introduced documentation corroborating that he had entered into an agreement to purchase a home in South Carolina. *See id.* at 246-47; Father's Exhibit 23. Father explained that this home was located in a premiere school district, which was confirmed by corroborative documentation introduced at the hearing. *See* N.T., 3/12/25, at 247-51; Father's Exhibit 24. Finally, Father also generally described the proposed neighborhood as being a "beautiful suburb" that was lively and filled with other children. *See* N.T., 3/12/25, at 247-48.

Father's testimony faithfully reflects the conclusions rendered by the trial court concerning relocation. To the extent Mother is asking us to re-weigh the evidence of record in her favor, we may not override the trial court's well-supported factual and credibility findings. *See White*, 296 A.3d at 1213.

As noted above, there are also significant factual and procedural differences between the instant case and *D.K.D.* Similarly, in *C.M.K.* this Court affirmed the denial of a proposed relocation from Grove City, Pennsylvania, to Albion, Pennsylvania, based upon the trial court's conclusion that the relocation would have a "negative impact" on the child's "emotional development" in that case. *C.M.K.*, 45 A.3d at 428. In *C.M.K.*, however, this

Court affirmed the trial court's denial of relocation because the credible evidence of record supported its conclusion. Here, the trial court reached the opposite conclusion, *i.e.*, it found that relocation would serve A.R.'s best interests. For the reasons already discussed above, we similarly conclude that the trial court's findings are supported by the record.

Based upon the foregoing, we find no merit in Mother's claims for relief concerning the relocation factors at Section 5337(h). No relief is due.

Mother's final claim for relief relates to the trial court's denial of her petition for contempt. **See** Mother's Brief at 63-67. Mother's claim relates to the portion of the existing custody order that addressed Father's sole legal custody of A.R., which provided, in relevant part, that Parents must keep each other informed regarding "all major medical, educational, religious, and legal decisions regarding" A.R. Order, 11/2/22, at 2. Mother maintains Father violated this requirement by "blocking" Mother "from contacting and receiving any information" regarding A.R.'s care at CHOP. Mother's Brief at 64.

This Court's standard of review over findings of contempt in the trial court is "extremely narrow." **In re Davis**, 302 A.3d 166, 180 (Pa.Super. 2023). This Court will "reverse only upon a showing of an abuse of discretion." **Godfrey v. Godfrey**, 894 A.2d 776, 780 (Pa.Super. 2006) (cleaned up). A trial court abuses its discretion in this context if it "misapplies the law or exercises its discretion in a manner lacking reason." **Id.**

Although not directly addressed in Mother's arguments, we discern that her claims sound in civil contempt, as opposed to criminal contempt. *See Fetzer v. Fetzer*, 336 A.3d 1058, 1065 (Pa.Super. 2025) ("If the dominant purpose of a contempt adjudication is to prospectively coerce the contemnor to comply with an order of the court, the adjudication of contempt is civil.") (cleaned up). In civil contempt proceedings, "the burden is on the complaining party to prove noncompliance by a preponderance of the evidence." *Hanbicki v. Leader*, 294 A.3d 1234, 1241 (Pa.Super. 2023). Specifically, in order to be found in civil contempt,

> a party must not only have violated a clear order, but that order must have been definite, clear, and specific—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. In such cases, a contradictory order or an order whose specific terms have not been violated will not serve as the basis for a finding of contempt. To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. . . .
>
> In other words, the alleged contemnor must know of the prohibited conduct, with any ambiguities, omissions, or uncertainties in the order construed in favor of the alleged contemnor, the act constituting the violation must be deliberate, and the act of the alleged contemnor must have been done with improper intent.
>
> *      *      *      *
>
> A mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt. Unless the evidence establishes an intentional disobedience or an

- 29 -

intentional disregard of the lawful process of the court, no contempt has been proven.

***Id.*** (cleaned up).

Instantly, the trial court denied Mother's contempt petition after concluding that Father had not violated the custody agreement:

> Mother's allegations of contempt centered on her access to the child's medical information and attendance at appointments. . . . Father was under no obligation to allow Mother to attend appointments. . . .The allegation that Father had cut off her access to the child's online health portal was directly contradicted by the testimony of the pediatric practice manager[, Ms. Marchant,] that it was in fact the decision of [the CHOP] legal team to limit Mother's access. There was no evidence introduced that Father was failing to provide information through the online application as required. As it was clear that Father did not violate this court's November 2, 2022, order, this allegation of error is without merit.

Trial Court Opinion, 5/16/25, at 23-24.

The trial court's findings are fully supported by the certified record. The specific basis of Mother's contempt allegations related to her being denied access to portions of A.R.'s medical records on CHOP's patient portal. ***See*** Mother's Brief at 63-64; Petition for Contempt, 3/22/24, at ¶¶ 6-7. While Mother baldly maintains that her lack of access was solely attributable to Father, Ms. Marchant testified in her role as CHOP's pediatric practice manager that the hospital made an independent decision to limit Mother's access based upon its legal department's interpretation of the trial court's November 2, 2022, custody order. ***See*** N.T., 3/12/25, at 200-09. There is simply no evidence suggesting that Father was responsible for the change in Mother's

privileges on the CHOP patient portal. Thus, we conclude that the trial court's finding is well-supported by the certified record.

Furthermore, Mother's own testimony indicated that Father kept her informed regarding A.R.'s medical appointments. *See id.* at 32-33. Mother's real complaint appears to be that Father often does not provide her with advance notice of A.R.'s appointments, sometimes only informing her a few days or hours before they occur. *See id.* The terms of the November 2, 2022, custody order, however, do not include any explicit provisions that require Father to keep Mother informed of A.R.'s medical appointments within a particular timeframe. *See generally* Order, 11/2/22, at 1-3. To the extent Mother seeks to exploit the absence of this language in the custody order to her advantage, our precedent requires that we construe any ambiguity in Father's favor. *See Hanbicki*, 294 A.3d at 1241. This claim also lacks merit.

Based upon the foregoing, we observe no abuse of discretion or error of law in the trial court's custody and relocation order. Thus, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/24/2025

- 31 -